IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ACCREDITED SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| MISSISSIPPI UNDERGROUND LLC, JORDAN JULIAN, DOWNRIGHT ENTERTAINMENT LLC, SHAWN ORTEZ, KENNETH CLAYTON ELKINS, LORIN ASHTON, BASSNECTAR TOURING, INC., and AMORPHOUS MUSIC, INC., | ) Case No. ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Accredited Specialty Insurance Company ("Accredited"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment against Mississippi Underground LLC ("Mississippi Underground"), Jordan Julian, DownRight Entertainment LLC ("DownRight Entertainment"), Shawn Ortez, Kenneth Clayton Elkins, Lorin Ashton, Bassnectar Touring, Inc. ("Bassnectar Touring"), and Amorphous Music, Inc. ("Amorphous Music") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment brought for the purpose of resolving an actual and justiciable controversy between the parties regarding their respective rights and obligations under a liability policy that Accredited issued to Mississippi Underground Sales LLC. In particular, Accredited seeks a declaration that it owes no duty to defend or indemnify any putative insured under the subject policy with respect to claims asserted in the lawsuit styled *Lorin Ashton, et al. v. Shawn Ortez, et al.*, Case No. 3:25-cv-02181-JPG, pending in the United States District Court for the Southern District of Illinois (the "Underlying Lawsuit").

## THE PARTIES AND CITIZENSHIP

2. Accredited is an insurance company organized and existing under the laws of the State of Arizona, with its principal place of business in Orlando, Florida. Accredited is authorized to transact the business of insurance in Illinois and elsewhere.

3. Upon information and belief, Mississippi Underground is a Missouri limited liability company with its principal place of business in St. Louis, Missouri.

4. Upon information and belief, Jordan Julian is the sole member of Mississippi Underground and a citizen of the State of Missouri.

5. Upon information and belief, Shawn Ortez is a citizen of the State of Illinois.

6. Upon information and belief, DownRight Entertainment is a Missouri limited liability company with its principal place of business in Ballwin, Missouri.

7. Upon information and belief, Kenneth Clayton Elkins is the sole member of DownRight Entertainment and a citizen of the State of Missouri.

8. Upon information and belief, Lorin Ashton is a citizen of the State of California.

9. Upon information and belief, Bassnectar Touring is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in California.

10. Upon information and belief, Amorphous Music is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in California.

11. Mr. Ashton, Bassnectar Touring, and Amorphous Music are joined as nominal defendants to the extent they are necessary and indispensable parties under applicable law, and to ensure that they are bound by any judgment entered in this action.

## JURISDICTION AND VENUE

12. This action is brought, in part, under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14. In actions for declaratory relief brought under diversity jurisdiction, the amount in controversy is measured by the value of the object of the litigation, including the pecuniary impact an adverse declaration would have on any party to the lawsuit.

15. If Accredited does not prevail, it may be required to defend and potentially indemnify one or more defendants in the Underlying Lawsuit for alleged damages that include substantial claimed economic losses, reputational harm, emotional distress, and punitive damages in an amount that exceeds $75,000.

16. This Court may properly exercise personal jurisdiction over Mississippi Underground because, upon information and belief, it has purposefully directed activities toward Illinois and this judicial district, including the conduct alleged in the Underlying Lawsuit, which is pending in this District. The claims asserted herein arise directly out of those contacts, and the exercise of personal jurisdiction over Mississippi Underground comports with due process.

17. This Court may properly exercise personal jurisdiction over Jordan Julian because, upon information and belief, he is a principal and/or member of Mississippi Underground and is alleged to have personally participated in conduct directed toward Illinois that forms the basis of the Underlying Lawsuit. The claims asserted herein arise out of and relate to those contacts with Illinois, and the exercise of jurisdiction over him is consistent with due process.

18. This Court may properly exercise personal jurisdiction over DownRight Entertainment because, upon information and belief, it purposefully directed activities toward Illinois and this judicial district giving rise to the claims asserted in the Underlying Lawsuit pending in this Court. The claims asserted herein arise out of and relate to those contacts, and the

exercise of personal jurisdiction over DownRight Entertainment comports with due process.

19. This Court may properly exercise personal jurisdiction over Shawn Ortez and Kenneth Clayton Elkins because, upon information and belief, each engaged in conduct purposefully directed toward Illinois that forms the basis of the Underlying Lawsuit pending in this District. The claims asserted herein arise out of and relate to those contacts, and the exercise of personal jurisdiction over each comports with due process.

20. This Court may properly exercise personal jurisdiction over Lorin Ashton because he initiated and is prosecuting the Underlying Lawsuit in this judicial district arising out of the same operative facts and circumstances at issue here. By invoking the jurisdiction of this Court, Mr. Ashton is subject to personal jurisdiction in this related declaratory judgment action.

21. This Court may properly exercise personal jurisdiction over Bassnectar Touring and Amorphous Music because each is a party to the Underlying Lawsuit pending in this District and has invoked the jurisdiction of this Court by asserting claims arising out of the same operative facts and circumstances at issue here. Each is therefore subject to personal jurisdiction in this related declaratory judgment action.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Underlying Lawsuit is pending in this District and a substantial part of the events giving rise to the coverage dispute occurred within this District.

## THE UNDERLYING LAWSUIT

23. On or about December 12, 2025, Mr. Ashton, Bassnectar Touring, and Amorphous Music filed the Underlying Lawsuit in the United States District Court for the Southern District of Illinois. (A true and correct copy of the Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit 1.)

24. The Underlying Lawsuit arises out of an alleged course of conduct relating to

competing music and entertainment events in and around the St. Louis metropolitan area. The plaintiffs in the Underlying Lawsuit contend that the defendants engaged in a coordinated and intentional campaign designed to disrupt, undermine, and interfere with the plaintiffs' business operations, promotional efforts, and contractual relationships.

25.     According to the allegations in the underlying Complaint, the defendants are alleged to have published, republished, and disseminated false, misleading, and defamatory statements concerning the plaintiffs through various social media platforms and other online channels. The Complaint further alleges that the defendants intended to interfere with the plaintiffs' relationships with venues, promoters, and attendees, and that defendants encouraged or facilitated online harassment, threats, and other disruptive behavior directed toward the plaintiffs and their affiliated events.

26.     The plaintiffs in the Underlying Lawsuit assert multiple causes of action arising out of these alleged activities, including claims sounding in defamation, business disparagement, tortious interference, unfair competition, and related theories of liability. They allege that, as a result of the defendants' conduct, they have sustained substantial reputational injury, lost business opportunities, economic losses, and other damages.

27.     The Underlying Lawsuit seeks wide-ranging relief, including but not limited to preliminary and permanent injunctive relief, compensatory damages, consequential damages, punitive or exemplary damages, attorneys' fees, and such other relief as the court deems appropriate.

## THE ACCREDITED POLICY

28.     Accredited issued Policy No. 2-RMS-17-S0113099-00 to Mississippi Underground Sales LLC for the policy period May 6, 2025 to May 6, 2026 (the "Policy"). (A true and correct copy of the Policy is attached hereto as Exhibit 2.)

5

29. The Policy includes coverage, in relevant part, for Commercial General Liability ("CGL"). The CGL Coverage Part contains a Limit of Insurance of $1 million dollars each "occurrence"[1] and $2 million dollars in the aggregate.

30. The Accredited Policy provides the following, in relevant part:

**SECTION I – COVERAGES**

\* \* \*

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

   \* \* \*

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

   \* \* \*

2. **Exclusions**

   This insurance does not apply to:

   \* \* \*

   a. **Knowing Violation Of Rights Of Another**

      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

---

[1] Terms in quotation marks are defined in the Policy.

    **b.** **Material Published With Knowledge Of Falsity**

       "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

*     *     *

**SECTION V – DEFINITIONS**

*     *     *

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;
    b. Malicious prosecution;
    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
    f. The use of another's advertising idea in your "advertisement"; or
    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

*     *     *

**EXCLUSION – LIBEL, SLANDER, DISPARAGEMENT, PRIVACY VIOLATION AND ADVERTISING INJURY ARISING OUT OF EXHIBITIONS AND RELATED MARKETING**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1. Exclusions**

    **A.** The following exclusion is added to paragraph **2. Exclusions of Section I – Coverage – B Personal and Advertising Injury Liability:**

       This insurance does not apply to:

**Personal and Advertising Injury Parts d, e, f and g Arising Out Of Exhibitions and Related Marketing**

The following parts of "personal and advertising injury":

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement";

if such activities arise out of or are part of "exhibitions and related marketing."

B. The **Infringement Of Copyright, Patent, Trademark Or Trade Secret** exclusion under paragraph **2. Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability** is deleted in its entirety and replaced by the following:

**Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However;

(1) Under the exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement"; and
(2) This exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

But, Exceptions (1) and (2) above do not apply to "personal and advertising injury" arising out of "exhibitions and related marketing."

2. **Definitions**

The following definition is added to **Section V - Definitions:**

"Exhibitions and related marketing" means:

(a) The creation, production, publication, performance, exhibition, distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works and similar productions or work, in any medium including videos, phonographic

8

   recordings, tapes, compact discs, DVDs, memory cards, electronic software or media, books, magazines, social media, webcasts and web sites.
  **(b)** The conduct of individuals in shows, theatrical productions, concerts, sporting events, or any other form of exhibition.
  **(c)** Merchandising, advertising or publicity programs or material for the operations and material described in **(a)** or **(b)** above.

*   *   *

<u>**ACCREDITED'S PRELIMINARY CLAIMS HANDLING**</u>

31. Following service of the Underlying Lawsuit, Mississippi Underground and certain individual defendants tendered the defense of the Underlying Lawsuit to Accredited and demanded defense and indemnity under the Policy.

32. By letter dated January 26, 2026, Accredited, through its authorized claims administrator, acknowledged receipt of the Underlying Lawsuit and agreed to provide a defense to Mississippi Underground and Mr. Julian subject to a full and complete reservation of rights.

33. The January 26, 2026 letter advised that significant coverage issues exist, including but not limited to whether any defendant qualifies as an insured under the Policy and whether certain exclusions apply to preclude or limit coverage for the claims asserted in the Underlying Lawsuit.

34. Accredited expressly reserved all rights under the Policy and applicable law, including the right to seek a judicial determination of its defense and indemnity obligations.

35. An actual, present, and justiciable controversy has arisen and now exists between the parties regarding their respective rights, duties, and obligations under the Policy, including whether Accredited has any defense or indemnity obligation thereunder based on the facts at issue.

**COUNT I – DECLARATORY RELIEF**
**(<u>None of the Defendants Qualify as Insureds Under the Policy</u>)**

36. Accredited restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

37. Accredited's coverage obligations, if any, extend only to those persons or entities that qualify as insureds under the Policy and only with respect to covered conduct.

38. Under Section II – Who Is An Insured of the Commercial General Liability Coverage Form, the limited liability company designated in the Declarations and its members qualify as insureds, but only with respect to the conduct of that company's business. Mississippi Underground Sales LLC is identified in the Declarations as the Named Insured and, as such, qualifies as an insured under the Policy.

39. The Policy does not contain any endorsement adding additional named insureds. Mississippi Underground Sales LLC and Mississippi Underground LLC are separate and distinct legal entities with different Missouri business registration numbers. While Mississippi Underground Sales LLC is a Named Insured under the Policy, Mississippi Underground LLC is not and therefore does not qualify as an insured.

40. The Policy further provides that the Named Insured's members are insureds only with respect to the conduct of the Named Insured's business, and that the Named Insured's managers are insureds only with respect to their duties as managers of the Named Insured.

41. The Underlying Lawsuit alleges that Jordan Julian is associated with Mississippi Underground and separately serves as head of production for DownRight Entertainment. Even assuming that Mr. Julian is a member or manager of Mississippi Underground, the Underlying Lawsuit does not allege that his purported conduct was undertaken on behalf of or in connection with the business of Mississippi Underground Sales LLC, the Named Insured.

42. Accordingly, based on the allegations of the Underlying Lawsuit and the terms of the Policy, Mr. Julian does not qualify as an insured.

43. The Policy also provides insured status to the Named Insured's "employees," other than managers, but only for acts within the scope of their employment by the Named Insured or

while performing duties related to the conduct of the Named Insured's business.

44. The Underlying Lawsuit alleges that Kenneth Clayton Elkins is the owner of DownRight Entertainment and books artists at Mississippi Underground, and that Shawn Ortez is a promoter for DownRight Entertainment who also works as a lighting technician at Mississippi Underground. The Underlying Lawsuit does not allege that either Elkins or Ortez was acting as an employee of Mississippi Underground Sales LLC, the Named Insured, or within the scope of employment for that entity when engaging in the alleged conduct.

45. Section II of the Policy further provides that no person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

46. DownRight Entertainment is not a Named Insured under the Policy. To the extent DownRight Entertainment is alleged to have participated in or coordinated activities with Mississippi Underground, any such conduct is attributable to an entity not listed in the Declarations and therefore does not confer insured status under the Policy.

47. The Policy contains a single additional insured endorsement titled Additional Insured – Managers or Lessors of Premises. That endorsement applies only where required by written contract and only with respect to liability arising out of the ownership, maintenance, or use of premises leased to the Named Insured. The allegations of the Underlying Lawsuit concerning social media activity, promotional conduct, and an alleged online campaign do not arise out of the ownership, maintenance, or use of any leased premises and therefore do not trigger the endorsement.

48. The Policy contains no other endorsement extending insured status to any person or organization other than the Named Insured. Accordingly, none of the defendants in the Underlying Lawsuit qualify as an insured under the Policy with respect to the claims alleged.

**COUNT II – DECLARATORY RELIEF**
**(No Coverage Under Coverage B to the Extent that Any "Personal and Advertising Injury" was Not Caused by an Offense Arising out of the Named Insured's Business)**

49. Accredited restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

50. Under the insuring agreement of Coverage B of the CGL Coverage Form, Accredited agrees to pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which the insurance applies.

51. Accredited has no duty to defend the insured against any "suit" seeking damages to which the insurance does not apply.

52. The insurance applies to "personal and advertising injury" caused by an offense arising out of the Named Insured's business.

53. The Policy defines "personal and advertising injury" to include certain enumerated offenses, such as oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services.

54. Even assuming that the Underlying Lawsuit alleges "personal and advertising injury" as defined by the Policy, coverage exists only if the alleged injury was caused by an offense arising out of the Named Insured's business.

55. The Underlying Lawsuit alleges that the defendants engaged in a coordinated online campaign, including social media postings and related communications, relating to competing entertainment events and promotional activities associated with entities and individuals other than the Named Insured, Mississippi Underground Sales LLC.

56. The allegations of the Underlying Lawsuit attribute the complained-of conduct to various individuals and entities, and such conduct is not alleged to have been undertaken in the course of or in connection with the business of Mississippi Underground Sales LLC.

57. To the extent any alleged defamatory, disparaging, or otherwise actionable statements or publications were made in furtherance of interests separate and distinct from the business of the Named Insured, including in connection with the promotion, management, or operation of other entities or ventures, such conduct does not arise out of the Named Insured's business within the meaning of Coverage B.

58. Based on the allegations in the Underlying Lawsuit, the requisite elements of Coverage B are not satisfied.

59. Accredited is entitled to a declaration that Coverage B affords no coverage, and no duty to defend or indemnify exists, on this basis.

## COUNT III – DECLARATORY RELIEF
### (The "Exhibitions and Related Marketing Exclusion" Applies to Bar Coverage)

60. Accredited restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

61. An endorsement to the Policy titled "Exclusion – Libel, Slander, Disparagement, Privacy Violation And Advertising Injury Arising Out Of Exhibitions And Related Marketing" (the "ERM Exclusion") eliminates coverage for "personal and advertising injury" offenses (d) through (g) "if such activities arise out of or are part of 'exhibitions and related marketing.'"

62. The underlying defendants' conduct allegedly fits within each prong of the "exhibitions and related marketing" definition.

63. As to subsection (a), the alleged conduct arose out of the creation, publication, distribution, and exploitation of music and related promotional content in internet and social media. The underlying dispute centers on competing New Year's Eve music events, one featuring Bassnectar and the other promoted by Mississippi Underground and its affiliates. The underlying plaintiffs allege that the defendants used social media platforms, including Facebook, Reddit, and similar online channels, to publish and amplify statements accusing Bassnectar of serious

misconduct, encouraging boycotts of the competing event, and steering public attention away from the plaintiffs' show.

64. Those social media posts constitute "publication" and "distribution" of internet productions and promotional material tied directly to live music events, which are expressly enumerated in subsection (a).

65. The fact that the alleged publications took place online and through social media places them within the listed media, and the fact that they were connected to the promotion and protection of a music event places them within the exploitation and promotion of music and promotional events.

66. Subsection (b) is implicated because the alleged conduct is inseparable from the conduct of individuals in connection with concerts and live exhibitions. The underlying plaintiffs allege that the defendants are promoters, organizers, and individuals involved in staging and producing live music events and that their actions were undertaken in that capacity.

67. The alleged campaign is not framed as personal commentary divorced from professional activity, but rather as conduct undertaken by individuals involved in concerts and live music exhibitions to influence attendance, perception, and viability of those events.

68. The alleged threats, statements, and online conduct are pled as actions taken in furtherance of, and in connection with, the staging and success of the defendants' concert, and the disruption of the plaintiffs' competing concert. In that sense, the conduct "arose out of" the conduct of individuals in concerts or other forms of exhibition, even if the conduct itself occurred online rather than on stage.

69. Subsection (c) is also satisfied. The underlying plaintiffs repeatedly allege that the defendants' social media activity was designed to function as advertising, publicity, and

promotional material for defendants' New Year's Eve event, while simultaneously undermining plaintiffs' competing event.

70. Encouraging boycotts, discouraging attendance, shaping public perception of the artist, and redirecting potential ticket buyers are classic publicity and marketing functions, even when accomplished through negative or comparative messaging. The allegations describe a coordinated publicity strategy aimed at influencing consumer behavior in the marketplace for live music events. That is the type of "advertising or publicity programs or material" for concerts and music events contemplated by subsection (c), regardless of whether the publicity is affirmatively promotional or negatively comparative in tone.

71. Taken together, the allegations describe conduct that may have originated from, flowed from, or been undertaken as part of the promotion, marketing, and competitive positioning of live music exhibitions and therefore may fall within the "exhibitions and related marketing" definition.

72. Accordingly, the ERM Exclusion applies to bar coverage for all claims asserted against the defendants in the Underlying Lawsuit.

## COUNT IV – DECLARATORY RELIEF
### (Exclusion a. (Knowing Violation of Rights of Another) Applies to Bar Coverage)

73. Accredited restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

74. Exclusion a. provides that the insurance under Coverage B does not apply to "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

75. This exclusion bars coverage where the underlying pleading alleges intentional, volitional conduct undertaken with knowledge that the conduct would injure another.

15

76. In the Underlying Lawsuit, the plaintiffs allege that the defendants knowingly engaged in conduct intended to violate the rights of plaintiffs and to cause reputational and related harm.

77. Such allegations place the asserted "personal and advertising injury" within the scope of Exclusion a., because the injury is alleged to result from deliberate acts undertaken with knowledge that those acts would violate another's rights and cause injury.

78. Accordingly, Exclusion a. applies to bar coverage for any alleged "personal and advertising injury" arising out of the defendants' purportedly knowing and intentional publication of statements and related conduct undertaken with the knowledge that such acts would violate the rights of the underlying plaintiffs and inflict reputational or other injury.

## COUNT V – DECLARATORY RELIEF
### (Exclusion b. (Material Published With Knowledge of Falsity) Applies to Bar Coverage)

79. Accredited restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

80. Exclusion b. provides that the insurance under Coverage B does not apply to "personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

81. The Complaint in the Underlying Lawsuit alleges that the defendants published statements they knew to be false or acted with knowledge of the falsity of the statements at issue.

82. Such allegations directly implicate Exclusion b., as the claimed "personal and advertising injury" arises out of the publication of material allegedly made with knowledge of its falsity.

83. Accordingly, Exclusion b. applies to bar coverage for any alleged "personal and advertising injury" arising out of the publication or dissemination of statements or other material

16

that the underlying plaintiffs contend was made by or at the direction of the defendants with knowledge of its falsity.

## COUNT VI – DECLARATORY RELIEF
### (Exclusion p. (Recording And Distribution Of Material Or Information In Violation Of Law) Applies to Bar Coverage)

84. Accredited restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

85. Exclusion p. provides that the insurance under Coverage B does not apply to "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate: (1) the Telephone Consumer Protection Act ("TCPA"), including any amendment of or addition to such law; (2) the CAN-SPAM Act of 2003, including any amendment of or addition to such law; (3) the Fair Credit Reporting Act ("FCRA"), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act ("FACTA"); or (4) any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

86. Under the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510/1 *et seq.*) (the "UDTPA"), certain disparagements, advertisements, representations, and statements, among other actions, constitute engaging in deceptive trade practices. This Illinois state statute addresses the dissemination, communication, or distribution of material or information and, thus, may fall under the fourth prong of this exclusion.

87. Specifically, the UDTPA states, in relevant part, that a person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the

17

person disparages the goods, services, or business of another by false or misleading representation of fact. 815 ILCS § 510/2(a)(9).

88. The alleged deceptive representations, misrepresentations, and false statements of Mr. Elkins, Mr. Jordan, DownRight Entertainment, and Mississippi Underground in the course of promoting their own competing event are alleged to constitute deceptive trade practices in violation of the UDTPA.

89. Accordingly, Exclusion p. applies to bar coverage for any alleged "personal and advertising injury" arising directly or indirectly out of the defendants' purported dissemination, communication, or publication of material alleged to constitute deceptive trade practices or other statutory violations governing the distribution or communication of information.

## COUNT VII – DECLARATORY RELIEF
### (No Coverage for Punitive or Exemplary Damages)

90. Accredited restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

91. The underlying plaintiffs seek recovery of punitive damages in addition to various other forms of relief.

92. Pursuant to the endorsement titled "Punitive or Exemplary Damages Exclusion," the insurance under the Policy does not apply, in relevant part, to any punitive damages, exemplary damages or the multiplied portion of any award because of any "personal and advertising injury."

93. To the extent that any punitive, exemplary, or treble damages are awarded in the Underlying Lawsuit, this exclusion applies to preclude coverage for all such damages which any insured may be legally obligated to pay.

## COUNT VIII – DECLARATORY RELIEF
### (No Duty to Indemnify)

94. Accredited restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

95. The duty to defend subsumes the duty to indemnify.

96. If there is no duty to defend, then there is no duty to indemnify as a matter of law.

97. Therefore, to the extent that Accredited owes no duty to defend, there likewise is no potential duty to indemnify.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Accredited Specialty Insurance Company, respectfully requests that this Court enter judgment in its favor, and against Mississippi Underground, Jordan Julian, DownRight Entertainment, Shawn Ortez, Kenneth Clayton Elkins, Lorin Ashton, Bassnectar Touring, and Amorphous Music as follows:

(a) Declaring that Accredited owes no duty to defend or indemnify any defendant with respect to the claims asserted in the Underlying Lawsuit; and

(b) Granting Accredited any other and further such relief as this Court deems just and appropriate.

## JURY DEMAND

Accredited hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated: February 17, 2026                                    Respectfully submitted,

/s/ Jordon S. Steinway
Jordon S. Steinway
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
Telephone: (312) 762-3169
jsteinway@batescarey.com

*Counsel for Accredited Specialty Insurance Company*

19